**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-21027-CV-WILLIAMS**

MANAURY OLIVAREZ GEORGE,

      Petitioner,

v.

WARDEN OF KROME, *et al.*,

      Respondents.

_____/

## ORDER

**THIS MATTER** is before the Court on Petitioner Manaury Olivarez George's ("***Petitioner***" or "***Mr. George***") Petition for Writ of Habeas Corpus (DE 1) ("***Petition***"). For the reasons discussed below, Mr. George's Petition (DE 1) is **GRANTED**.

### I.    FACTUAL BACKGROUND

Mr. George is a citizen of the Dominican Republic. (DE 1 at 6). On September 12, 2019, Mr. George was granted conditional permanent residence in the United States by the United States Citizenship and Immigration Service ("***USCIS***"). (DE 7 at 2). On August 16, 2021, Mr. George filed a Form I-751[1] to remove the conditions on his residence status, which is still pending before USCIS. (*Id.*) On January 19, 2024, Mr. George was convicted of three counts of simple battery, one count of criminal trespass, and one count of hindering an emergency telephone call in violation of the Georgia Criminal Code. (*Id.*) Mr. George was sentenced to confinement of eight months on count one and consecutive terms of twelve months of probation for each of the remaining counts. (*Id.*)

---

[1] Form I-751 is a Petition to Remove Conditions on Residence.

On June 28, 2025, Mr. George returned from a trip abroad and presented to United States Customs and Border Protection ("**CBP**") as a returning conditional permanent resident. (*Id.*) CBP determined that Mr. George was an inadmissible applicant for admission because at least one of his convictions was for a crime involving moral turpitude. (*Id.*) The next day, Mr. George was taken into custody by U.S. Immigration and Customs Enforcement ("**ICE**"). (*Id.* at 2–3).

On July 22, 2025, the Krome immigration Court held a custody hearing. (*Id.* at 3). The immigration judge took "no action" on his bond request and asked for further briefing on whether any of Mr. George's convictions qualify as a crime involving moral turpitude. (*Id.*) On July 27, 2025, Mr. George filed a motion to terminate the removal proceedings with the Krome Immigration Court, arguing that he has not been convicted of an offense that qualifies as a crime involving moral turpitude. (*Id.*) The immigration judge held another custody hearing on August 5, 2025 but again took "no action" on his bond request pending resolution of Mr. George's motion to terminate. (*Id.* at 3–4). Ultimately, on September 29, 2025, the immigration judge granted Mr. George's motion to terminate, finding that Mr. George has not been convicted of an offense constituting a crime involving moral turpitude. (DE 7-10 at 4–5). The Parties do not indicate that the immigration judge ever took action on Mr. George's bond request. On October 29, 2025, DHS appealed the immigration judge's order to the Board of Immigration Appeals ("**BIA**"). (DE 7 at 4).

Mr. George filed an initial Petition for Writ of Habeas Corpus, which was denied by the Court on December 31, 2025. *Manuary Olivarez George v. Todd M. Lyons et al.*, No. 25-cv-25859-KMW, at *5 (S.D. Fla. Dec. 31, 2025). The Court noted that, "if the BIA fails to take up this matter in the reasonably near future, the Petitioner may renew his request

with the Court." *Id*. at *4 n.3. Mr. George was hospitalized the following month for influenza and suffered an adverse reaction to antibiotics. (DE 1 at 9). He continues to experience serious symptoms, even after his discharge from the hospital back into immigration custody. *See* (*id.* at 10). On February 17, 2026, Mr. George filed the instant Petition. (*Id.* at 16). He renewed his request for his release or a bond hearing, arguing that his detention is indefinite and unconstitutional. (*Id.*) As of the filing of George's Reply on March 9, 2026, there was still no briefing schedule for Respondents' BIA appeal. (DE 8 at 5). The Court has received no indication that a briefing schedule has been set since that filing.

## II.     LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Respondents rehash the same arguments made in their Response to Mr. George's initial habeas petition: the Court should dismiss the Petition because Mr. George failed to exhaust administrative remedies and 8 U.S.C. § 1252(g) precludes the Court from questioning ICE's discretionary decision to commence removal proceedings. The Court has already addressed both arguments but will do so once more. *See Manuary Olivarez George v. Todd M. Lyons et al.*, No. 25-cv-25859-KMW, at *3-4 (S.D. Fla. Dec. 31, 2025).

The exhaustion requirement is not a jurisdictional bar. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) (acknowledging the abrogation of prior Eleventh Circuit precedent interpreting § 1252(d)(1) as a jurisdictional bar by *Santos-Zacaria v. Garland*, 598 U.S. 411, 413 (2023)). Further, § 1252(g) bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action ... to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). It "does not cover[ ] all claims arising from deportation proceedings or impose[ ] a general jurisdictional limitation." *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257 (11th Cir. 2020) (citation and quotation marks omitted). Claims challenging the legality of a petitioner's detention are not barred by this provision. *Pita v. Warden, Krome Serv. Processing Ctr.*, No. 26-CV-22055-JB, 2026 WL 1947877, at *2–3 (S.D. Fla. July 6, 2026). Accordingly, the Court once again rejects these arguments and turns to the question of whether Mr. George's prolonged detention without a bond determination violates his due process rights.[2]

In *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1213–14 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018), the Eleventh Circuit considered when mandatory detention under 8 U.S.C. § 1226(c) becomes unconstitutionally prolonged, requiring a bond

---

[2] The Parties did not brief whether Mr. George has been convicted of a crime involving moral turpitude, and if not, whether the applicable provision of the Immigration and Nationality Act is 8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). As the immigration judge found, there is reason to believe that Mr. George did not commit a crime involving moral turpitude, which would prevent him from being considered an applicant for admission subject to mandatory detention. (DE 7-10 at 2, 4–5). However, as the Court finds there are independent grounds to grant Mr. George's Petition, the Court tailors its analysis to those grounds.

hearing.[3] Although the petitioner in *Sopo* was detained under 8 U.S.C. § 1226(c), courts find it persuasive in evaluating whether detention under 8 U.S.C. § 1225(b) has become unconstitutionally prolonged as well. *See Pita*, 2026 WL 1947877, at *2, 5 (evaluating whether detention pursuant to 8 U.S.C. § 1225(b) had become unconstitutionally prolonged under *Sopo*); *Lainez Briceno v. Warden, Fed. Det. Ctr.*, No. 25-CV-25586-RAR, 2026 WL 1004695, at *6 (S.D. Fla. Apr. 14, 2026) (quoting *Sopo* in evaluating whether detention under § 1225(b) had become unconstitutionally prolonged, though not analyzing each of the factors).

The *Sopo* factors include: (1) "the amount of time that the criminal alien has been in detention without a bond hearing"; (2) "why the removal proceedings have become protracted"; (3) "whether it will be possible to remove the criminal alien after there is a final order of removal"; (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; and (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Sopo*, 825 F.3d at 1217–19 (citations omitted). The *Sopo* court also expressed approval of factors considered by the First Circuit, including (1) "the total length of the detention"; (2) "the foreseeability of proceedings concluding in the near future (or the likely duration of future detention)"; (3) "the period of the detention compared

---

[3] Despite *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016) being vacated by the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), courts within this Circuit continue to rely on it as persuasive authority in determining whether prolonged pre-removal detention passes constitutional muster. *See e.g., Gabrius v. Dep't of Homeland Sec.,* No. 24-22680-CIV, 2024 WL 5046042, at *2 (S.D. Fla. Sept. 10, 2024); *Stephens v. Ripa*, No. 22-CV-20110-JEM, 2022 WL 621596, at *2 (S.D. Fla. Mar. 3, 2022); *Warsame v. Meade*, No. 20-CV-22401-CMA, 2020 WL 13551825, at *3 (S.D. Fla. Aug. 18, 2020).

to the criminal sentence"; (4) "the promptness (or delay) of the immigration authorities or the detainee"; and (5) "the likelihood that the proceedings will culminate in a final removal order." *Id.* at 1218 (quoting *Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016), *opinion withdrawn on reconsideration*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018)). These factors are "not exhaustive" and courts "must consult the record and balance the government's interest in continued detention against the criminal alien's liberty interest." *Sopo*, 825 F.3d at 1218−19.

Under these factors, Mr. George's detention has become unreasonably prolonged. Starting with the first *Sopo* factor, the Eleventh Circuit has noted that detention without bond will likely become unreasonable by the one-year mark. *Id.* at 1217. Mr. George is past the one-year mark already. He was taken into immigration custody on June 29, 2025, almost exactly thirteen months ago. Although custody hearings were held, the immigration judge did not make a bond determination. The immigration judge took "no action" on Mr. George's bond request while evaluating Mr. George's motion to terminate. Respondents argue that, "[p]etitioner's impatience does not form a legal basis to overturn this Court's well-reasoned order that was decided a mere 2 months prior to the Petitioner filing a second Petition." (DE 7 at 9). The Court disapproves of Respondents' characterization of Mr. George as "impatient," particularly given his hospitalization while in custody and continued incarceration even after prevailing in front of the immigration judge.

Turning to the second *Sopo* factor, the removal proceedings have become protracted because Respondents appealed the immigration judge's determination. Mr. George has fully and expediently participated in his immigration proceedings. The third Sopo factor, whether it will be possible to remove the petitioner after there is a final order

of removal, is undetermined at this point. The fourth *Sopo* factor examines whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable. Mr. George was only incarcerated for eight months for his criminal case, yet he has remained in immigration detention for over a year now. Therefore, this factor weighs in his favor.

The fifth *Sopo* factor similarly weighs in Mr. George's favor. This factor considers whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention. *Id*. Mr. George has been detained primarily at the Krome North Service Processing Center, which is an ICE detention facility. (DE 7 at 3–4). Respondents did not address this factor in their response and have not shown that Mr. George's detention is meaningfully different from a penal institution or criminal detention. This factor, thus, weighs in Mr. George's favor.

The Court now considers the factors that the First Circuit outlined, of which *Sopo* expressed approval. *Sopo*, 825 F.3d at 1218. The first is the total length of detention. This factor weighs in favor of release just as the amount of time that Mr. George has been in detention without a bond hearing does. The second factor considered by the First Circuit analyzes the foreseeability of the proceedings concluding in the near future. It is over nine months since Respondents initiated their appeal to the BIA, and the Court has still not been apprised of a briefing schedule. At this point, the Court cannot conclude that the BIA proceedings will resolve in the near future. Next, the third factor considered by the First Circuit analyzes the period of detention compared to the criminal sentence. As stated above, Mr. George's immigration detention has already exceeded his period of incarceration in the criminal case. The fourth factor considered by the First Circuit looks

to the promptness (or delay) of the immigration authorities or the detainee. Mr. George timely filed his initial motion to terminate. His protracted detention is due to Respondents' appeal and the BIA's delay in adjudicating it. This does not weigh against Mr. George's claim. Finally, the Court considers the likelihood that the proceedings will culminate in a final removal order. Mr. George prevailed in front of the immigration judge. The Court cannot divine how the BIA will rule, but on this record, it cannot find that this factor weighs in favor of Respondents.

In sum, the majority of the factors articulated in *Sopo* weigh in Mr. George's favor; none weight against his claim. The Court is mindful that Mr. George has been detained for over thirteen months, and, absent a bond hearing, will surely remain detained until the BIA decides his appeal. *See e.g., Warsame v. Meade*, No. 20-22401-CIV, 2020 WL 13551825, at *4 (S.D. Fla. Aug. 18, 2020) (granting habeas relief where detention was nearing the twelve-month mark). Therefore, based upon on the specific facts of this case, the Court concludes that Mr. George's continued detention without a full custody review and bond determination violates his due process rights.

Accordingly, for the reasons set forth above, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (DE 1) is **GRANTED**.[4]

2. Respondents shall afford Mr. George an individualized bond hearing **within seven (7) days** of this Order or otherwise release Mr. George.

---

[4] The Court will not address Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 in the Petition's prayer for relief. (DE 1 at 42). Should Petitioner wish the Court to consider the request, Petitioner must file a timely motion, which meets all other statutory requirements. *See* § 28 U.S.C. § 2412(d).

3.  Respondents shall also, within 24 hours of the bond hearing, file a Status Report indicating the outcome of the bond hearing and, if bond is denied, the reason(s) for the denial.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 12th day of August, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE